IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUETTA L. CARR,<br><br>       Plaintiff,<br><br>           v.<br><br>CHICAGO BD. OF EDUCATION,<br>WILLIAM HOOKS, SHEILA<br>FOWLER, CARA O'SHEA, MARY<br>ERNESTI<br><br>       Defendants. | No. 19-cv-7275<br>Honorable Franklin U. Valderrama |

AMENDED MEMORANDUM OPINION AND ORDER[1]

Plaintiff Jacquetta Carr (Carr), taught music at the Chicago High School for Agricultural Sciences. Carr alleges that she was constructively discharged by the Defendant Chicago Board of Education of the City of Chicago (the Board). Carr, proceeding *pro se*, filed this lawsuit against Defendants William Hooks, the Principal of the Chicago High School for Agricultural Sciences, as well as Sheila Fowler, Cara O'Shea, and Mary Ernesti (Individual Board Defendants) and the Board (collectively with the Individual Board Defendants, Defendants)[2] for age discrimination under the

---

[1] The Court issues an Amended version of its Opinion issued on September 29, 2023, R. 61, to clarify language in the Conclusion: specifically, to clarify that if Carr elects not to file an Amended Complaint by October 20, 2023, the case will be terminated as to the Board Defendants, but not as to Defendant Cervantes. No other changes have been made.

[2] The Amended Complaint also includes allegations against Adrienne Cervantes of the Chicago Teachers Union. Am. Compl. ¶¶ 3, 5, 16–17. Cervantes inadvertently was not served by the Marshals Service. *See* R. 60. The Court has confirmed with the Marshals Service that service is in the process of being effectuated. The Court therefore does not address Carr's claims against Cervantes in this Opinion; however, without prejudging the issue, the Court advises Plaintiff that similar deficiencies may exist as to her claims against Cervantes as described herein regarding the Individual Board Defendants.

Age Discrimination in Employment Act (ADEA), race discrimination under Title VII of the Civil Rights Act (Title VII), and a claim for discrimination based on freedom of speech under the First Amendment, construed by the Court as a First Amendment retaliation claim under 42 U.S.C. § 1983 (Section 1983). R.[3] 36, Am. Compl. Defendants move to dismiss Carr's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 45, Mot. Dismiss (the Motion). For the reasons stated below, Defendants' Motion is granted.

## Background[4]

Carr, an African American female over the age of forty, was hired on March 16, 2018 by the Board to teach music at Chicago High School for Agricultural Sciences. Am. Compl. at 7.[5]

Once Carr was onboarded into the music program, Principal Hooks required changes to Carr's syllabus that were not required of other teachers. Am. Compl. at 10. Some of these changes included preventing Carr from having classroom discussions on racial and social issues. *Id.* To prevent Carr from having discussions surrounding the history and social issues surrounding the birth and development of various genres, Principal Hooks sat in on classroom discussions to prevent these

---

[3]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[4]The Court accepts as true all the well-pled facts in the Complaint and draws all reasonable inferences in favor of Carr. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

[5]Carr filed her EEOC charge on April 24, 2019, making June 28, 2018 the 300th day prior to the charge. Defendants contend that any act that occurred prior to the 300-day window is time-barred. The Court includes allegations before this date in the background section solely for context, and the Court agrees with Defendants that Plaintiff has failed to exhaust her administrative remedies against them. *See infra*, Section I(B).

dialogues from occurring. *Id.* at 10–11. Eventually, the school pushed Carr's lessons onto a younger teacher and forced her to change grades for failing students. *Id.* at 11–12.

Carr also experienced and overheard several conversations which demonstrated an alleged culture of discrimination. Am. Compl. at 14, 19. Carr was told by other staff that she was going to be fired at her scheduled hearing, leading Carr to believe the administration was sharing sensitive information. *Id.* at 16.

This "conspiracy," which Carr claims was orchestrated and encouraged by the Individual Board Defendants, led to a "pre-orchestrat[ion] [of] termination based on race[,]" in spite of positive peer evaluations. Am. Compl. at 19. Carr also alleges that Oshea told all white teachers at a meeting they could offer honors courses, while Oshea refused to allow Carr to do the same. *Id.* at 20.

Carr alleges she was forced to resign, and that she was targeted for termination based on her age and race. Am. Compl. at 6. Carr alleges that she was replaced by a younger male teacher. *Id.* at 11–12.

Carr filed a charge with the United States Equal Opportunity and Employment Commission (EEOC) on April 24, 2019. R. 35, EEOC Charge. In her EEOC Charge, Carr alleges discrimination based on race and age and names the Chicago Teachers Union as the Respondent, and alleges that her union representative failed to provide or recommend representation before the investigative hearing. *Id.* The EEOC issued Carr a right to sue on July 25, 2019. *Id.*

Carr's original Complaint, filed with the Court on November 4, 2019, was dismissed without prejudice. R. 1, R. 33. Carr filed her Amended Complaint on April 18, 2022. Am. Compl. Defendants in turn, moved to dismiss the Amended Complaint. This fully briefed Motion is before the Court.[6]

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[6]While Carr argues in her Response that Defendants' Motion is untimely, the Court disagrees. Defendants requested additional time until June 8, 2022 to file their motion to dismiss, R. 41, Mot. Extension, which request was granted by the Court on June 1, 2022. R. 42, Minute Entry.

4

## Analysis

### I. Exhaustion of Administrative Remedies

As an initial matter, Defendants argue that Carr's Title VII and ADEA claims should be dismissed for failure to exhaust administrative remedies. Mot. Dismiss at 3–4.

### A. Title VII and ADEA

To place Defendants' Motion in context, a brief overview of the interplay between a Title VII and ADEA claim, and the requirement to exhaust remedies, is required. Title VII prohibits employers from discriminating against their employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a). "To succeed on a Title VII discrimination claim, an employee must prove (1) that she is a member of a protected class, (2) that she suffered an adverse employment action, and (3) causation." *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (cleaned up).[7] Race must at least be a "motivating factor" in the defendant's challenged employment decision for purposes of stating a Title VII race discrimination claim. *Id.* (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am-Owned Media*, 140 S. Ct. 1009, 1017 (2020) (cleaned up).

The ADEA prohibits employers from discriminating against an employee because of the employee's age. 29 U.S.C. § 623(d). Specifically, the ADEA "makes it unlawful for an employer to take adverse action against an employee because of the

---

[7]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

individual's age." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 171 (2009) (citing 29 U.S.C.S. § 623(a) (cleaned up). Unlike the causation standard for a Title VII claim, for an ADEA claim a plaintiff "must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* at 176.

A party who wishes to bring a Title VII or ADEA claim in federal court must first file an administrative charge with the EEOC within 300 days of the allegedly unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C.S. § 626(d). *See Brown v. Chicago Transit Auth. Pension Bd.*, 86 Fed. Appx. 196, 198 (7th Cir. 2004) (unpublished) ("Title VII requires that a charge be filed within 300 days of an unlawful employment practice"); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (employee must sue under the ADEA within 300 days of the unlawful employment practice). That is, the plaintiff "must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (cleaned up). Exhaustion of administrative remedies is neither a jurisdictional prerequisite nor an essential element of a Title VII or ADEA claim, "but a condition precedent to bringing a claim under the Act." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (cleaned up); *see Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) ("In order to bring an ADEA claim in federal court, a plaintiff must have raised it in a timely EEOC charge.").

After doing so, a plaintiff cannot pursue a Title VII or ADEA claim in a lawsuit that was not included in his or her EEOC charge. As with most rules, there is an

exception. "A plaintiff may pursue a claim not asserted in the EEOC charge if that claim is like or reasonably related to the allegations of the EEOC charge and growing out of such allegations." *Straub v. Jewel Food Stores, Inc.*, 2018 WL 4512060, at *8 (N.D. Ill Sept. 20, 2018) (quoting *Moore v. Vital Prods.*, 641 F.3d 253, 256 (7th Cir. 2011)) (cleaned up); *see also Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). "Claims are 'like or reasonably related' when (1) there is a reasonable relationship between the allegations in the charge and the claims in the complaint and (2) the claims in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Chaidez*, 937 F.3d at 1004 (cleaned up). As the Seventh Circuit has explained, "[d]etermining whether the complaint and the EEOC charges contain claims that are 'like or reasonably related to' each other requires a careful examination and comparison of the charges and the complaint." *Id.* at 1005. Put simply, the charges and the complaint must "at minimum, describe the same conduct and implicate the same individuals." *Id.* (cleaned up). Seventh Circuit precedent is clear that "only those claims that are fairly encompassed within an EEOC charge can be the subject of a resulting lawsuit." *Chambers v. American Trans Air*, 17 F.3d 998, 1003 (7th Cir. 1994); *see also Graham v. AT&T Mobility, LLC*, 247 F. App'x 26, 29 (7th Cir. 2007) (explaining that generally a plaintiff cannot file suit for a claim not alleged in the EEOC charge). Requiring a plaintiff to first file a Charge with the EEOC serves a dual purpose: (1) affording the EEOC and the employer the opportunity to settle the dispute, and (2) giving the

employer warning of the conduct about which the aggrieved employee is complaining. *Cheek*, 31 F.3d at 500.

### B. Whether Carr Exhausted her Administrative Remedies

Defendants point out that the EEOC charge filed April 24, 2019, names the "Chicago Teachers Union," an entity separate and distinct from the Board. Mot. Dismiss at 3. In addition, Defendants note that the allegations in the EEOC charge do not describe any discriminatory conduct by the Board or the Individual Board Defendants. *Id.* at 3–4. Instead, the Charge alleges that the Chicago Teachers Union failed to provide Carr with adequate representation in a timely manner before an investigative hearing was held. *Id.* In short, Carr's EEOC Charge, filed on April 24, 2019, and for which she received a right to sue letter on July 25, 2019, does not demonstrate that Carr exhausted her administrative remedies against the Board and Individual Board Defendants. *Id.* (citing *Chaidez*, 937 F. 3d at 1005) ("at minimum, [the Charge and Complaint must] describe the same conduct and implicate the same individuals.").

The Court agrees. The initial inquiry is whether Carr's Title VII race discrimination and ADEA age discrimination claims against Defendants were asserted in the EEOC charge. A review of the EEOC Charge reveals that Carr did select "race" and "age" as the basis of discrimination, and included the following allegation: "I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, and because of my age, 58 (date of birth: 1960), in violation of the Age Discrimination in

Employment Act of 1967, as amended." EEOC Charge. However, the Respondent identified in the EEOC Charge is "Chicago Teachers Union," and Carr does not identify the Defendants in this case as Respondents in the EEOC Charge. That, however, does not end the inquiry because Carr may yet defeat the Defendants' Motion if her claim is "like or reasonably related to the allegations of the EEOC charge and grows out of such allegations." *Straub*, 2018 WL 4512060, at *8.

Again, a review of the EEOC charge reveals that not to be the case. That is, there is no reasonable relationship between the allegations in the Charge—which concern allegations of race and age discrimination against the Chicago Teachers Union regarding a failure to represent before she alleges being forced to resign—and the claims in Carr's Amended Complaint concerning the actions of Defendants towards Carr in allegedly forcing her resignation. Specifically, in her Amended Complaint, Carr alleges that she was discriminated by the Defendant Board on the basis of race and age. But the only allegation in her EEOC charge was that the Chicago Teachers Union failed to provide or recommend representation before the investigative hearing. Nor can it be said that the claims in Carr's Amended Complaint against the Board and Individual Board Defendants can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge against the Chicago Teachers Union. The Board and Individual Board Defendants are not named or mentioned in the EEOC Charge.

Predictably, Carr disagrees. Carr argues that the Board and Individual Board Defendants were made aware of the EEOC charge during the EEOC investigation

9

and initial Complaint. R. 50, Resp. Mot. Dismiss at 5. However, the claim that Carr's contact with Individual Board Defendants during and after her employment with the school district is insufficient to put the Defendants on notice of the EEOC Charge is not supported by case law, which requires a timely EEOC Charge be filed notifying the employer of the alleged discrimination. *See*, *e.g.*, *Williams v. Cnty. of Cook*, 969 F. Supp. 2d 1068, 1076–77 (N.D. Ill. 2013) (dismissing Title VII and ADEA claims where plaintiff failed to mention in her EEOC Charge, or name as respondents, the defendant entities identified in the complaint).

All in all, there are no conceivable facts upon which the EEOC charge alleging failure of adequate representation by the Chicago Teachers Union would put the Board or the Individual Board Defendants on notice that a lawsuit was impending against them for race and age discrimination, and Carr fails to cite any persuasive authority indicating otherwise. Without naming the Board or the Individual Board Defendants in the EEOC charge, Carr presented no opportunity to the Board or the Board Defendants to become aware of the nature of her claims and settle them. Bringing an EEOC charge against the Chicago Teachers Union cannot support allegations against the Board, a separate and distinct organization whose actions "do not involve the same conduct or implicate the same individuals." *Cheek*, 31 F.3d at 501.[8] The only remaining issue is whether the dismissal is with or without prejudice.

_____

[8]With respect to the Individual Board Defendants, dismissal is also proper because, regardless of the EEOC exhaustion deficiencies, the Seventh Circuit has made clear on numerous occasions that Title VII and ADEA claims do not provide for individual liability. *See United States EEOC v. AIC Sec. Investigations*, 55 F.3d 1276, 1281 (7th Cir. 1995) (noting that Title VII and the ADEA were designed by Congress to grant remedies that only an employer, not an individual, could provide); *Williams v. Banning*, 72 F.3d 552, 554–55 (7th

The Seventh Circuit has instructed that, when a plaintiff fails to exhaust his administrative remedies, any dismissal should generally be without prejudice. *See Teal*, 559 F.3d at 693; *see also Smith v. Union Pac. R. Co.*, 564 F. App'x 845 (7th Cir. 2014) (reversing dismissal with prejudice based on failure to file EEOC charge within 300-day window because district court should have given the plaintiff an opportunity to amend his complaint by pleading facts that he asserted in response to motion to dismiss). Under normal circumstances, "the plaintiff [is] free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims." *Green v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989). This principle ordinarily "applies to dismissals for failure to bring an employment discrimination claim in an EEOC charge; such dismissals are without prejudice to the plaintiff pursuing her claim in federal court upon properly exhausting the unexhausted claims, subject of course to the statute of limitations and any other applicable defenses." *Brown v. United Airlines, Inc.*, 2015 WL 5173646, at *4 (N.D. Ill. Sep. 2, 2015).

That said, the determination that Carr has failed to exhaust her administrative remedies based on the EEOC Charge she includes with her Amended Complaint is preclusive with respect to any attempt by Carr to relitigate the question of whether Carr exhausted her administrative remedies pursuant to that EEOC Charge before filing suit. *See Hill v. Potter*, 352 F.3d 1142, 1146–47 (7th Cir. 2003).

---

Cir. 1995) (a supervisor in their individual capacity does not fall within Title VII's definition of employer); *Horwitz v. Bd. Of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001) (plaintiff properly brought ADEA claim against employer, in line with Seventh Circuit precedent that there is no individual liability under the ADEA). The Court included this ruling that there is no individual liability under the ADEA or Title VII in its prior Order dismissing Carr's original Complaint. *See* R. 33, 1–2.

The Court has determined that Carr is not entitled to the benefits of the continuing violation doctrine. Nor is she entitled to any form of equitable tolling, which is applicable in three limited circumstances:

> [W]hen a plaintiff exercising due diligence cannot within the statutory period obtain the information necessary to realize that she has a claim; when a plaintiff makes a good-faith error such as timely filing in the wrong court; or when the defendant prevents a plaintiff from filing within the statutory period.

*Porter v. New Age Servs. Corp.*, 463 Fed. Appx. 582, 584 (7th Cir. 2012) (unpublished) (cleaned up). Carr has not demonstrated any of the three requirements for equitable tolling, and is not entitled to its protection. "[T]he time for [Carr] to exhaust has clearly expired, [and] there is no practical distinction between a dismissal without prejudice and a dismissal with prejudice." *Brown*, 2015 WL 5173646 at *4. The Court's determination that Carr has failed to exhaust her administrative claims is preclusive of any attempt to relitigate the question of whether she exhausted her administrative remedies based upon the EEOC Charge she includes with her Amended Complaint prior to filing suit. *See Hill*, 352 F.3d at 1146 (determining that failure to exhaust administrative remedies was preclusive in nature of his claims, and noting that certain dismissals without prejudice can be preclusive in respect to a jurisdictional ruling).

Therefore, the Court's dismissal of Carr's Title VII and ADEA claims against Defendants have the effect of a dismissal with prejudice.[9] With the Court having found that Carr failed to exhaust her administrative remedies for her Title VII and

---

[9]This would not be the case, however, if, for example, Carr had a separate EEOC Charge which named the Board as a Respondent and which is submitted with an Amended Complaint, if any.

ADEA claims, it need not address Defendants' remaining arguments vis-à-vis the Title VII and ADEA claims.

## II.     Section 1983 First Amendment Retaliation Claim

In her Amended Complaint, Carr also alleges that Defendants discriminated against her based on her freedom of speech under the First Amendment. Am. Compl. at 6, 10–11. Namely, Carr alleges that Defendants collectively harassed her by sitting in on her classroom lessons and prevented her from discussing racial and social issues, while allowing these discussions by other teachers. *Id.* at 10–11.

The Court has the power and duty to liberally construe Carr's *pro se* complaint. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). Although Carr did not allege with specificity the basis of her First Amendment claim following the grant of Defendants' first motion to dismiss on March 28, 2022, Carr did not abandon her First Amendment claim against the Board Defendants in her Amended Complaint. Instead, Carr re-asserted her First Amendment claim by providing additional details supporting her allegations, although she did not respond to the points raised by the Defendants in their original motion to dismiss.

The First Amendment does not independently create a federal cause of action. *Slovinec v. Ill. Dep't of Human Servs.*, 2005 WL 442555, at *12 (N.D. Ill. Feb. 22, 2005). Therefore, the Court construes Carr's First Amendment claim as arising under 42 U.S.C. § 1983. Section 1983 provides that any person who under the color of law

causes the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

For the reasons that follow, Carr's First Amendment retaliation count fails to state a claim upon which relief may be granted.

### A.   Rule 8 Requirements

It is a basic principle that "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (cleaned up). However, "[m]aterials or elaborations in [plaintiff's] brief opposing dismissal may be considered, so long as those materials or elaborations are 'consistent with the pleadings.'" *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (quoting *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Where a complaint is "sparse" for facts, adding facts "consistent" with the complaint would amount to amending the deficient complaint. *Bruno v. Glob. Experience Specialists, Inc.*, 2020 WL 5253139, at *3 (N.D. Ill. Sept. 3, 2020). The Court will consider the allegations contained in Carr's complaint along with those contained in her response and other filings. *See Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 2012) (indicating that courts may assess additional materials prepared by a *pro se* plaintiff to enable a thorough evaluation of the merits).

Although there was little added regarding Carr's First Amendment claim in her response brief, she did provide an additional email in her response brief from Carr to Defendant Hook regarding discussion of race, racial experiences, perceptions, or politics surrounding race. Resp. Mot. Dismiss at 11. Carr also raised allegations in

14

her response brief that "[She] was under constant threat and harassment of what [she] taught, how [she] taught it, and [Principal Hooks] monitored and threatened if [Carr] taught anything the principal deemed unacceptable. [Principal Hooks] did not threaten any other teacher or called them in continually to keep them under constant fear." *Id.* at 12. This email, combined with her claim in the Amended Complaint that "Principal Hooks forbade discussion on racial, and social issues, and outlined in the textbook they provided the history and social issues surrounding the birth and development of various genres", and "[t]he principal harassed me by sitting in my room to ensure no discussion on the topics occurring from a teacher or student violating my freedom of speech and freedom of expression[]" is sufficient for the purposes of Federal Rule of Civil Procedure 8(a)(2). Am. Compl. at 10–11. It is common practice for practitioners to lay out the basis for a claim in a straight-forward manner. However, the Court will not punish a *pro se* plaintiff for failure to follow the formalities of trained attorneys. *See Gonzalez v. Crosby*, 545 U.S. 524, 544 (2005) (Stevens, J., dissenting) (noting that *pro se* plaintiffs are not held to the same standard as that of counseled litigants).

### B. The Sufficiency of Carr's First Amendment Retaliation Claim

Defendants argue that the speech in question, relating to the discussion of race and politics in the music classroom, occurred within Carr's job duties, which defeats her First Amendment claim. The determination of whether speech is constitutionally protected is a matter of law. *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008).

Even with the additional details provided in her Amended Complaint, Carr has failed to properly plead a First Amendment retaliation claim. To properly plead a claim for First Amendment retaliation under Section 1983, Carr must demonstrate that she (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the speech was at least a motivating factor in the adverse employment action. *Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016) (citing *Hartman v. Moore*, 547 U.S. 250, 259 (2006)); *Sweet v. Town of Bargersville*, 18 F.4th 273, 277–78 (7th Cir. 2021). The "plaintiff must establish a 'causal connection' between the [employer's] 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (cleaned up).

### 1. Whether Carr's Speech was Protected Under the First Amendment

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). But "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Because Carr is a public employee, her speech is protected by the First Amendment only if (1) she made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) her interest in expressing that speech was not outweighed by the state's interest as an employer in

promoting effective and efficient public service. *Swetlick v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (cleaned up).

It is clear from the allegations contained in Carr's Amended Complaint that she did not speak as a private citizen. *See Garcetti*, 547 U.S. at 421 (2006). While employees retain the prospect of protection in contributing to the public discourse, this does not grant an employee "with a right to perform their jobs however they see fit." *Id.* The Court's focus in analyzing whether speech was made pursuant to official duties is to look to "the duties an employee is actually expected to perform" and whether the speech "owes its existence to a public employee's professional responsibilities." *Id.* at 421, 424–25.

Carr's Amended Complaint and Response both indicate that the speech at issue occurred within the confines of Carr's classroom. *See* Resp. Mot. Dismiss at 11 ("You do not want me to allow the students to engage in conversations that deal with race, racial experiences, perceptions, or politics surrounding race such as what was mentioned by several African American and Caucasian students *in class* who shared their experiences surrounding police encounters.") (emphasis added); *see also* Am. Compl. at 10–11 ("The principal harassed me by sitting in my room to ensure no discussion on the topics occurring from a teacher or student . . . ."). Accepting Carr's well-pled allegations as true for purposes of the Motion, these allegations demonstrate that Carr's speech was not protected by the First Amendment, even if it involved a matter of public concern.

17

While the Court could end its analysis at this juncture, the Court also finds that Carr's Amended Complaint fails to establish the third prong—that the speech was a substantial or motivating factor in the retaliatory action.

### 2. Whether Carr's Speech was a Substantial or Motivating Factor in the Retaliatory Action

Carr has also failed to include allegations to support an inference that her speech was a substantial or motivating factor in Carr's constructive discharge. *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977) (requiring that the conduct in question is a "substantial" or "motivating" factor in an adverse employment decision); *Speigla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004) ("[T]he plaintiff must establish that the speech was a substantial or motivating factor in the retaliatory action.").

Carr did not causally link her "protected speech" with her being forced to resign. Instead, Carr's allegation is that her speech prompted Principal Hooks to sit in on her classes and monitor her classroom behavior. Am. Compl. at 10–12. Beyond this, Carr alleges no facts that show Carr's classroom speech was at least a motivating factor in her constructive discharge. In short, Carr fails to plausibly allege that Defendants retaliated against her following her exercise of free speech.

For these reasons, Carr's First Amendment claim against the Board Defendants is dismissed with prejudice. Carr does not request leave to amend in her Response, and, in any event, amendment would likely be futile. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013) (highlighting that granting a second leave to amend is discretionary, and rests upon persuading the court that an amendment

would resolve outstanding issues without causing undue prejudice). Given that the Court finds that Carr has failed to state a First Amendment retaliation claim under Section 1983, the Court declines to address Defendants' arguments on qualified immunity.

## Conclusion

In summary, Carr's Title VII, ADEA, and First Amendment claims against Defendants are dismissed. Carr's Title VII and ADEA claims are dismissed without prejudice, subject to the caveats included in Section I(B) *supra*, and Carr's First Amendment retaliation claim is dismissed with prejudice. Carr may choose to file an Amended Complaint, if any, on or before October 20, 2023 that is consistent with this Opinion. Failure to file an Amended Complaint consistent with this Opinion on or before October 20, 2023 will result in termination of the Board Defendants from this case. However, the case will proceed as to Defendant Cervantes.

Dated: September 29, 2023

Amended: October 4, 2023

United States District Judge
Franklin U. Valderrama